**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| DAVID WALLACE CROFT and | § | |
| SHANNON KRISTINE CROFT, | § | |
| parents of minor children, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| | § | Civil Action No. 3:06-CV-434-M |
| | § | |
| GOVERNOR OF THE STATE OF | § | |
| TEXAS, RICK PERRY, and | § | |
| CARROLLTON-FARMERS BRANCH | § | |
| INDEPENDENT SCHOOL DISTRICT, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Plaintiffs' Motion for Summary Judgment, alleging that Texas'

moment of silence law, Texas Educ. Code § 25.082(d), violates the Establishment Clause of the

Constitution; Defendant Rick Perry's Cross Motion for Summary Judgment and Defendant

Carrollton-Farmers Branch Independent School District's Motion for Summary Judgment, both

advocating upholding the statute as constitutional.

Having considered the briefs, relevant authorities, and oral argument, for the reasons

stated herein, the Court **DENIES** Plaintiff's Motion, **GRANTS** Defendant Rick Perry's Cross-

Motion, and **DENIES** as moot the motion of Defendant Carrollton-Farmers Branch Independent

School District ("School District"). Although this case presents a close question because the

Texas legislature was less than clear in articulating the secular purpose of the Texas moment of

silence law, the Court finds a secular purpose and concludes that the law is constitutional.

<u>Background</u>

Plaintiffs David Wallace Croft and Shannon Kristine Croft, as parents and next friends of their minor children, filed suit, alleging that the Texas moment of silence law is unconstitutional under the Establishment Clause of the First Amendment, both as applied and on its face.

At the oral argument held in this case on August 1, 2007, Plaintiffs agreed to a dismissal of their claims against the School District, since Plaintiffs are only challenging the constitutionality of the statute as it was enacted by the state legislature, not the policy as enacted by the School District. In an Order dated November 2, 2006, this Court dismissed Plaintiffs' as applied claims against the School District for failure to plead that the School District enacted the policy "with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." Therefore, the Court **DENIES** the School District's Motion as moot.

The Plaintiff and the Governor move for summary judgment on Plaintiffs' remaining claim—their facial challenge to the moment of silence law. The statute at issue, which became effective September 1, 2003, provides:

> The board of trustees of each school district shall provide for the observance of one minute of silence at each school in the district following the recitation of the pledges of allegiance to the United States and Texas flags under Subsection (b). During the one-minute period, each student may, as the student chooses, reflect, pray, meditate, or engage in any other silent activity that is not likely to interfere with or distract another student. Each teacher or other school employee in charge of students during that period shall ensure that each of those students remains silent and does not act in a manner that is likely to interfere with or distract another student.

Tex. Educ. Code § 25.082(d). Prior to the enactment of this statute, there were two statutes that related to the subject matter of § 25.082(d), which provided:

> Sec. 25.082. SCHOOL DAY.
> (b) A school district may provide for a period of silence at the beginning of the first class of each school day during which a student may reflect or meditate.

Sec. 25.901. EXERCISE OF CONSTITUTIONAL RIGHT TO PRAY. A public
school student has an absolute right to individually, voluntarily, and silently pray
or meditate in school in a manner that does not disrupt the instructional or other
activities of the school. A person may not require, encourage, or coerce a student
to engage in or refrain from such prayer or meditation during any school activity.

Tex. Educ. Code (1995). Section 25.901 was not changed by the Legislature. Subsection (d),

the moment of silence statute at issue, is in part a revision of § 25.082(b). The legislature also

added a new subsection (b) that required each school district to require students to recite the

pledges of allegiance to the United States flag and the Texas flag, providing an exception for

students excused from participation in the pledges upon written request from their parents.

The legislature made five changes to the earlier version of § 25.082(b), which became the

challenged provision, § 25.082(d): (1) it made the provision of a moment of silence mandatory

rather than discretionary; (2) it changed "period of silence" to "one minute of silence"; (3) it

added the word "pray" to the list of designated options; (4) it added the catch-all "or engage in

any other silent activity that is not likely to interfere with or distract another student"; and (5) it

added a provision for teachers or other school employees to maintain discipline during the one-

minute period.


## Analysis

The Supreme Court established a framework for analyzing challenges under the

Establishment Clause of the First Amendment in *Lemon v. Kurtzman*, 403 U.S. 602 (1971). The

*Lemon* test has three prongs: "first, the statute must have a secular legislative purpose; second,

its principal or primary effect must be one that neither advances nor inhibits religion . . . ; finally,

the statute must not foster 'an excessive government entanglement with religion.'" *Id.* at 612-13.

In other words, the purpose and effect must be secular, and the statute cannot cause an improper association between the government and religion.  If all three prongs are satisfied, the challenged state action survives constitutional scrutiny.

Four key cases have applied the *Lemon* test to state-enacted "moment of silence" statutes: *Wallace v. Jaffree*, 472 U.S. 38 (1985); *Bown v. Gwinnett County School District*, 112 F.3d 1464 (11th Cir. 1997); *Brown v. Gilmore*, 258 F.3d 265 (4th Cir. 2001); and *May v. Cooperman*, 780 F.2d 240 (3d. Cir. 1985).  *Jaffree* and *May* invalidated the challenged moment of silence laws, and *Brown* and *Bown* upheld them.  In each case, some legislative history suggested that for some legislators, the purpose of the laws was to restore prayer to public schools.  Given the importance of these cases to the Court's reasoning under the first prong of the *Lemon* test, the Court summarizes their reasoning.

### Prong One:  Secular Purpose

In *Wallace v. Jaffree* the United States Supreme Court determined that the Alabama legislature and the Alabama governor were acting in defiance of the prohibition against prayer in schools.  472 U.S. 38 (1985).  The challenged statute was Alabama Code § 16-1-20.1, which provided:

> At the commencement of the first class of each day in all grades in all public schools the teacher in charge of the room in which each class is held may announce that a period of silence not to exceed one minute in duration shall be observed for meditation or voluntary prayer, and during any such period no other activities shall be engaged in.

At a preliminary injunction hearing, the district court heard testimony from State Senator Donald G. Holmes, the prime sponsor of the bill.  Senator Holmes testified that the bill was an "effort to return voluntary prayer to our public schools . . . it is a beginning and a step in the right

direction." Senator Holmes testified that, other than this purpose, he had "no other purpose in mind." This testimony was in line with a statement that Senator Holmes had inserted into the legislative record—that the statute was an "effort to return voluntary prayer" to the public schools.

The Supreme Court found this "unrebutted evidence of legislative intent" to be "confirmed by a consideration of the relationship between this statute" and other proposed versions of the statute. *Id.* at 58. The Court then compared the statute to its predecessor, § 16-1-20, which had provided:

> At the commencement of the first class each day in the first through six grades in all public schools, the teacher in charge of the room in which each such class is held shall announce that a period of silence, not to exceed one minute in duration, shall be observed for meditation, and during any such period silence shall be maintained and no activities engaged in.

The Court stated that the "only significant textual difference" was the "addition of the words 'or voluntary prayer,'" although the statute also made the moment of silence permissive instead of mandatory by substituting "may" for "shall" in the section providing for a moment of silence in grades seven through twelve.[1] *Id.* at 59. The Court found that the earlier statute contained "nothing that prevented any student from engaging in voluntary prayer during a silent minute of meditation" and that the state had "not identified any secular purpose that was not fully served by

---

[1] Governor Perry cites *Jaffree* and *May* for the proposition that a "change from a permissive to a mandatory period of silence has no constitutional relevance." Governor's Response at 7, n.8. Actually, *Jaffree* concerned a change from mandatory to permissive and did not consider whether a shift to a mandatory moment of silence would be a significant in a constitutional analysis. 472 U.S. at 59. The Court explained that the mandatory moment of silence still applied to grades one through six under the previous law, § 16-1-20, and noted that that statute was not being challenged. Likewise, the Third Circuit in *May* construed "shall permit" in the challenged New Jersey statute to be permissive "insofar as student participation is concerned." 780 F.2d at 246. However, *Bown* and *Brown* both examined statutes with mandatory language and did not find that language significant to the analysis. *Brown* found "no material distinction" between a permissive and mandatory moment of silence, 258 F.3d at 281, and the *Bown* court did not address the mandatory nature of the law before it. This Court does not find the textual change from "may" to "shall" to be constitutionally significant.

§ 16-1-20 before the enactment of § 16-1-20.1." *Id.* The Court found that the Alabama legislature revised the statute "for the sole purpose of expressing the State's endorsement of prayer activities for one minute at the beginning of each school day." *Id.* at 60. The Court further held that the addition of "or voluntary prayer" to the meditation permitted by the statute indicated "that the State intended to characterize prayer as a favored practice." *Id.*

Governor George Wallace, who had replaced the governor who was in office when § 16-1-20.1 was passed, argued that the law was "best understood as a permissible accommodation of religion." *Id.* at 57, n.45. In a footnote in its opinion, the Supreme Court was dismissive of Wallace's newly advanced secular purpose, in light of the evidence of express religious purposes at the time of enactment. *Id.* The Court explained that "there was no governmental practice impeding students from silently praying . . . thus, there was no need to "accommodate" or to exempt individuals from any general governmental requirement." *Id.*

In her frequently cited concurring opinion in *Wallace v. Jaffree*, Justice O'Connor noted that, while a statute providing that "a student may choose to pray silently during a quiet moment" is not unconstitutional *per se*, "the face of the statute or its legislative history may clearly establish that it seeks to encourage or promote voluntary prayer over other alternatives, rather than merely provide a quiet moment that may be dedicated to prayer by those so inclined." *Id.* at 73. She further concluded that the key issue "is whether the State has conveyed or attempted to convey the message that children should use the moment of silence for prayer," an issue that must be considered not "in the abstract, but instead [by the court examining] . . . the history, language, and administration of a particular statute to determine whether it operates as an endorsement of religion." *Id.* at 74. Justice O'Connor emphasized that "[i]f a legislature expresses a plausible secular purpose for a moment of silence statute in either the text or the

legislative history, or if the statute disclaims an intent to encourage prayer over alternatives during a moment of silence, then courts should generally defer to that stated intent." *Id.* at 74-75. Justice O'Connor expressed "little doubt that our courts are capable of distinguishing a sham secular purpose from a sincere one," and concluded that "[a] moment of silence law that is clearly drafted and implemented so as to permit prayer, meditation, and reflection within the prescribed period, without endorsing one alternative over the others, should pass this test." *Id.* at 76.

Immediately following *Jaffree*, the Third Circuit, in *May v. Cooperman,* invalidated a moment of silence law. 780 F.2d 240 (3d. Cir. 1985). The statute, passed in 1983 by the New Jersey legislature, over the Governor's veto, provided:

> Principals and teachers in each public elementary and secondary school of each school district in this State shall permit students to observe a 1 minute period of silence to be used solely at the discretion of the individual student, before opening exercises of each school day for quiet and private contemplation or introspection.

*Id.* at 241. The statute did not mention the word "pray," but the Third Circuit noted Justice O'Connor's observation in *Jaffree* that legislative history might reveal a purpose to favor prayer in schools over other uses of the moment of silence. The district court noted the "history in the New Jersey legislature of other less facially neutral efforts to return prayer to the public schools." *Id.* The Third Circuit affirmed the district court's finding that the statute, although facially neutral, had religious, rather than secular, purposes. The only secular purpose advanced by the intervening defendants—"to provide a transition from nonschool life to school life"—was rejected by the district court as pretextual, and the Third Circuit did not reverse that finding. 780 F. 2d at 252. The district court found persuasive evidence that before its enactment, school boards and teacher organizations throughout the state "overwhelmingly opposed the Bill on the ground that

it had no educational value." *May v. Cooperman*, 572 F. Supp. 1561, 1570 (D.N.J. 1983). The Third Circuit noted that there was "ample" evidence supporting the district court's conclusion that the purpose of the legislation was not secular, but religious, referencing testimony by witnesses "suggesting that the primary concern of the legislators supporting the bill was to permit prayer in school." 780 F.2d at 252, n.9. Thus, the Third Circuit affirmed the trial court's finding that "the legislature's purpose in enacting [the law] . . . was religious, at least to the extent of requiring school districts to accommodate those students desiring the opportunity to engage in prayer at some point during the school day." *Id.* at 252. Without a non-pretextual secular purpose advanced, the Third Circuit invalidated the statute.

Twelve years later, in *Bown v. Gwinnett County School District*, 112 F.3d 1464 (11th Cir. 1997), the Eleventh Circuit upheld the following Georgia statute:

> (a) In each public school classroom, the teacher in charge shall, at the opening of school upon every school day, conduct a brief period of quiet reflection for not more than 60 seconds with the participation of all the pupils therein assembled.

> (b) The moment of quiet reflection authorized by subsection (a) of this Code section is not intended to be and shall not be conducted as a religious service or exercise but shall be considered as an opportunity for a moment of silent reflection on the anticipated activities of the day.

> (c) The provisions of subsections (a) and (b) of this Code section shall not prevent student initiated voluntary school prayers at schools or school related events which are nonsectarian and nonproselytizing in nature.

O.C.G.A. § 20-2-1050. The statute's uncodified preamble stated:

> The General Assembly finds that in today's hectic society, all too few of our citizens are able to experience even a moment of quiet reflection before plunging headlong into the day's activities. Our young citizens are particularly affected by this absence of an opportunity for a moment of quiet reflection. The General Assembly finds that our young, and society as a whole, would be well served if students were afforded a moment of quiet reflection at the beginning of each day in the public schools.

*Bown* at 1466. In reviewing the legislative history of the statute, the court noted that Senator

David Scott, the primary sponsor of the bill, introduced the measure "as a part of a package of

legislation aimed at reducing violence among Georgia's youths." *Id.* at 1467. However, the

comments of some Georgia House members revealed that they "wanted to institute school prayer

and apparently believed that Senate Bill 396 would accomplish this goal." *Id.* Nevertheless, the

language of the statute was religiously neutral, as the word "pray" was not listed as an activity for

the students to engage in during the "brief period of quiet reflection."

The *Bown* court concluded that the Georgia legislature enacted the statute for a "clearly

secular purpose." The court referred to language from the preamble and part (b) of the Act,

which "expressly articulates a clear secular purpose and also expressly disclaims a religious

purpose." *Id.* at 1469. In a footnote, the court also noted that the legislature had deleted the

words "prayer or meditation" from the prior version of the law, and substituted the words "period

of quiet reflection" to further evince a secular purpose and noted that this legislative history was

"much different from that in *Jaffree*." *Id.* at 1470, n.3 and 1471. The court addressed the

statements of some House members as expressing "religious motives" for voting for the Act but

determined "at the very least that the legislative history cannot be construed to override the

express statutory language articulating a clear secular purpose and also disclaiming a religious

purpose." *Id.* at 1472.

In *Brown v. Gilmore*, 258 F.3d 265 (4th Cir. 2001), the Fourth Circuit upheld this

Virginia statute:

> In order that the right of every pupil to the free exercise of religion be guaranteed
> within the schools and that the freedom of each individual pupil be subject to the
> least possible pressure from the Commonwealth either to engage in, or to refrain
> from, religious observation on school grounds, the school board of each school
> division shall establish the daily observance of one minute of silence in each

classroom of the division.  During such one-minute period of silence, the teacher responsible for each classroom shall take care that all pupils remain seated and silent and make no distracting display to the end that each pupil may, in the exercise of his or her individual choice, meditate, pray, or engage in any other silent activity which does not interfere with, or impede other pupils in the like exercise of individual choice.  The Office of the Attorney General shall intervene and shall provide legal defense of this law.

Va. Code Ann. § 22.1-203.  This statute amended a prior version of the law, which authorized, but did not require, local school boards to establish a minute of silence to allow students "to meditate, pray, or engage in any other silent activity."  The word "pray" had been a part of the statute since 1976.

In reviewing the legislative history of the bill, the Fourth Circuit focused on the statements of the bill's sponsor, Senator Warren Barry, who stated:

> The purpose of the Bill has been stated and restated is not a religious crusade.  It's not to try and re-inject prayer in the public school system.  The primary thing was out of the frustrations that many of us have felt based on the violence in some of our schools, such as Columbine and the Khenchla situation in Oregon.  This was simply an opportunity, hopefully, that kids in school would reflect if more than anything else.  I'm saying, we're not putting prayer on a higher pedestal or a lower pedestal than meditate and reflect.  But if students would just spend one minute to reflect on who they are, what they're doing and where they're going.  The word prayer in there was put in there so prayer would not be discriminated against.

*Brown*, 258 F.3d at 272.  The House floor manager of the bill explained that the bill was grounded in both "sound public policy" and the secular purposes "of maintaining good order and discipline, creating student focus on the activities at hand and assisting the teachers in beginning the day with a period of calm which would lead to better discipline in the classroom."  *Id.*  In his signing statement, Governor Gilmore praised the bill and expressed his hopes that it would "restore a sense of calm and civility in public schools by offering students a peaceful minute each day to reflect upon their studies, to collect their thoughts, or, if they so choose, to bow their heads and pray."  *Id.*  Shortly after the statute's enactment, the Virginia Department of Education

issued a memorandum to school division superintendents and public school principals, stating that the "legislation reflects the view that Virginia's young, and society as a whole, would be well served if students were afforded a moment of quiet reflection at the beginning of each day." *Id.* The memo also suggested that teachers introduce the moment of silence by saying, "As we begin another day, let us pause for a moment of silence." *Id.*

The *Brown* court determined that the statute satisfied the first prong of the *Lemon* test because it had "at least two purposes, one of which is clearly secular and one of which may be secular even though it addresses religion." *Id.* at 276. The two purposes evinced were to permit nonreligious meditation and to accommodate religious practice by allowing students to pray silently. The court held that "the accommodation of religion is itself a secular purpose in that it fosters the liberties secured by the Constitution." *Id.* The court concluded that the legislative history reinforced these secular purposes, noting statements of Senator Barry that the statute was enacted to provide an opportunity during which "kids in school would reflect if more than anything else." *Id.* at 277. The court also had the benefit of Virginia Department of Education Guidelines, which were in effect since 1994, interpreting the prior version of the statute. The court found that the Guidelines "focused most on the beneficial nonreligious purposes provided by a quiet time."

The court went on to distinguish its case from *Wallace v. Jaffree*, stressing Alabama's "campaign of defiance." *Id.* at 279. The court contrasted those facts to the facts underlying the Virginia statute, noting that there was no evidence of "open defiance." *Id.* at 280. To the contrary, the court found that the legislature had engaged in "serious consideration of relevant Supreme Court precedents" and had demonstrated "concern" about acting constitutionally. *Id.* The court found that the Virginia legislators "clearly debated and acknowledged both religious

and secular purposes" and described "the benefits of a minute of silence even for students who would not use the allotted time to pray." *Id.* at 281. The court also found that the context of enactment was distinguishable because "cautious guidelines" had been circulated five years earlier and the Virginia superintendent of schools had distributed a memorandum to all teachers "admonishing them not to permit the minute of silence to become a religious observance." *Id.*

### Prongs Two and Three: Effects and Entanglement

Having found prong one of *Lemon* satisfied, the *Bown* and *Brown* courts moved to consideration of the second and third prongs of the *Lemon* test. The *Bown* court determined that the primary effect of the law was not to advance or inhibit religion. The court cited an announcement made over the school public address system by a school principal, as well as an Administrative Bulletin circulated to all school principals instructing teachers not to suggest that students use the moment of quiet reflection for prayer. *Id.* at 1472. The court also noted the lack of evidence "that any teacher encouraged prayer in violation of the guidelines stated in the Administrative Bulletin" or "that any students were exhorted to pray, favored for praying, or disfavored for not praying." *Id.* The court also held that the statute satisfied the third prong of the *Lemon* test, finding that "[t]he fact that a teacher must stop a student who prays audibly or otherwise makes noise during the moment of quiet reflection does not result in excessive government entanglement with religion." *Id.* at 1474.

In *Brown*, which involved only a facial challenge to the statute, the court only briefly analyzed the second and third prongs of *Lemon*. The court held that on its face the statute did not advance or inhibit religion since it was neutral between "religious and nonreligious modes of introspection and other silent activity." 258 F.3d at 277. Assuming that the statute would be

enforced as written, the court found that it would not violate *Lemon's* third prong by fostering an excessive entanglement between religion and government, since "the teacher will simply inform the students of their statutory options during an enforced minute of silence." *Id.* at 278.

Analysis

Plaintiffs first argue that all moment of silence laws are unconstitutional because they are meant to foster, through the "back-door," state-sponsored prayer in school. The Court denies summary judgment on this ground. Although in *Wallace v. Jaffree* the Court struck down Alabama's moment of silence law, its analysis supports the conclusion that such laws can be constitutionally valid. The Supreme Court long ago acknowledged that "the observance of a moment of reverent silence at the opening of class [may serve] . . . the solely secular purposes of the devotional activities without jeopardizing either the religious liberties of any members of the community or the proper degree of separation between the spheres of religion and government." *Abington School District v. Schempp*, 374 U.S. 203, 281 (1963).

Plaintiffs also argue that the Texas statute is unconstitutional under the *Lemon* test. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971). In their Motion for Summary Judgment, Plaintiffs challenge the Texas statute only under the first prong of *Lemon*: that it lacks a secular legislative purpose. In their response to the Governor's cross-motion, Plaintiffs also argue that the statute fails prongs two and three of the *Lemon* test, arguing that the statute's primary effect is the advancement of religion and that the statute fosters an excessive government entanglement with religion.

*A. Secular Legislative Purpose*

This case fits squarely between *Jaffree* and *May,* on one end of the spectrum, and *Bown* and *Brown* on the other. *Jaffree* and *May* involved moment of silence laws fueled, as clearly evidenced by their respective legislative histories, by a desire of the legislatures to take steps to put prayer back in public schools. In the two more recent cases, *Bown* and *Brown*, the courts upheld the challenged legislation based on text and legislative histories steeped in language about the secular purposes of the laws. The facts surrounding passage of the Texas moment of silence law cause it to fall between those two ends of the spectrum—the key question is where? Senator Wentworth proposed the first draft of this legislation, Senate Bill 83, after he read about the Fourth Circuit's decision in *Brown,* which upheld Virginia's moment of silence law. As a result, the language of the Texas statute, as initially proposed and as adopted, is very similar to that of the Virginia law. However, the legislative history of the Virginia statute was very significant in causing the Fourth Circuit to declare the statute constitutional. Thus, this Court must review the legislative history of the Texas statute, rather than to rely on the Fourth Circuit's conclusions about the legislative history of the similarly worded Virginia law considered in *Brown*.

The Supreme Court recently rearticulated and emphasized the importance of the secular purpose prong of the *Lemon* test, noting that "we have not made the purpose test a pushover for any secular claim." *McCreary County v. ACLU*, 545 U.S. 844, 864 (2005). As was made clear in the Supreme Court's decisions in two cases considering Ten Commandments displays, *McCreary County* and *Van Orden v. Perry*[2]*,* both issued June 27, 2005, similar actions or legislation can be upheld as constitutional in one setting, but unconstitutional in another, based on the legislative history and context that accompanied each.[3] Because the harm the

---

[2] 545 U.S. 677 (2005).
[3] In footnote 14 of the *McCreary* opinion, the Court explained why divergent results were possible and appropriate:

establishment clause seeks to prevent is the *appearance* of government endorsement of religion or a particular sect, it is the path that leads to the legislation in addition to the text of the legislation itself that is relevant to the first prong of the *Lemon* test. The Court explained that "[w]hile heightened deference to legislatures is appropriate for the review of economic legislation, an approach that credits any valid purpose, no matter how trivial, has not been the way the Court has approached government action that implicates establishment." *Id.* at 865, n.13. The Supreme Court has repeatedly noted that it is "particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools." *Edwards v. Aguillard*, 482 U.S. 578, 584 (1987).

The Supreme Court has held that although a single secular purpose will satisfy the *Lemon* test's first prong, "the secular purpose required has to be genuine, not a sham, and not merely secondary to a religious objective." *McCreary County*, 545 U.S. at 864. The initial burden is on the complainants to allege that there is a religious purpose behind the statute. The burden then shifts to the government to advance a secular purpose, and then, it is the duty of the court to "distinguish a sham secular purpose from a sincere one." *Jaffree,* 472 U.S. at 75.

---

One consequence of taking account of the purpose underlying past actions is that the same government action may be constitutional if taken in the first instance and unconstitutional if it has a sectarian heritage. This presents no incongruity, however, because purpose matters. Just as Holmes's dog could tell the difference between being kicked and being stumbled over, it will matter to objective observers whether posting the Commandments follows on the heels of displays motivated by sectarianism, or whether it lacks a history demonstrating that purpose. The dissent, apparently not giving the reasonable observer as much credit as Holmes's dog, contends that in practice it will be "absur[d]" to rely upon differences in purpose in assessing government action.

As an initial matter, it will be the rare case in which one of two identical displays violates the purpose prong. In general, like displays tend to show like objectives and will be treated accordingly. But where one display has a history manifesting sectarian purpose that the other lacks, it is appropriate that they be treated differently, for the one display will be properly understood as demonstrating a preference for one group of religious believers as against another. While posting the Commandments may not have the effect of causing greater adherence to them, an ostensible indication of a purpose to promote a particular faith certainly will have the effect of causing viewers to understand the government is taking sides.

*Id.* at 866, n.14.

## 1. *Neeley letter*

In searching for a secular legislative purpose, Governor Perry relies in significant part on a letter written by Shirley J. Neeley, Commissioner of the Texas Education Agency. Def.'s App. at 17. The letter is dated October 10, 2006, just one week before the Governor filed his Response and Cross Motion in this case and more than three years after the passage of the statute. Neeley's letter purports to remind administrators of Texas schools about the requirements of Texas Educ. Code § 25.082(b). Neeley's letter then expounds on the three purposes for the statute now asserted by Governor Perry in this lawsuit, and asserts that "[e]ach of these separate purposes independently undergirds the statute": accommodating religion, encouraging thoughtful contemplation, and promoting patriotism. Neeley articulates the importance of those three purposes and explains how the statute effectuates those purposes.

The Court finds the timing and context of the Neeley letter, purporting to instruct school administrators on the legislative purposes for the statute, curious at best. If the letter addressed the purposes only in the context of how the pledges and moment of silence should be implemented in classrooms, it would be less troublesome. However, less than half of the letter addresses implementation. No explanation is given for what prompted the writing of the letter three years after the passage of the statute. For example, if Neeley had cited problems in the statute's administration or a lack of uniformity in its application, there would be a logical explanation for its timing. No such credible explanation was given nor can one be inferred. The particular timing of Neeley's letter, after the commencement of this litigation and after Plaintiffs filed their Motion for Summary Judgment, leads the Court to ignore the statements in the Neeley letter as evincing secular purposes for the statute. The Court must therefore look elsewhere to

find evidence of a secular legislative purpose.

## 2. Legislative history

### i. Contemporaneous written statements of purpose

Unlike the legislative history in *Bown* and *Brown*, there were no contemporaneous statements in the bill itself, in its preamble or in a signing statement, which evince a secular legislative purpose or disclaim a religious purpose. Therefore, the text of the statute itself and statements made by legislators and testifying witnesses are the only sources available to the Court for determining whether a secular legislative purpose exists.[4]

### ii. Text of the statute

The Texas legislature amended § 25.082 in several respects. Among them was the addition of the word "pray" in the list of activities available to students during the moment of silence. The *Brown* and *Bown* cases are not instructive on the relevance of this addition, as neither case addressed a similar situation.[5] The *Jaffree* court directly addressed an amended statute where "pray" had been added to a prior statute listing options for students during a moment of silence. In *Jaffree*, the Court found that since the earlier statute contained "nothing that prevented any student from engaging in voluntary prayer during a silent minute of meditation" and that the State had "not identified any secular purpose that was not fully served by" the statute before its amendment, the addition of the word "pray" did not serve a secular

---

[4] The Senate Research Center created a document entitled Bill Analysis, which included a "Digest and Purpose" for Senate Bill 83. The particular author of the Digest and Purpose is unknown. The document merely states what the prior law said and that the new law requires public schools to set aside a minute each day for silent prayer, meditation, or reflection following the recitation of the pledges of allegiance to the United States and Texas flags. This statement does not illuminate any purpose, secular or religious, for the new language.

[5] The Georgia statute upheld by the *Bown* court did not include the word "pray," and the Virginia statute considered by the *Brown* court had included the word "pray" since it was first codified in 1976. Thus, neither of those courts

legislative purpose.  472 U.S. at 58.

The parties here agree that prayer was implicitly allowed under the text of the former statute.[6]  Additionally, there was a separate section of the Texas Education Code, §25.901, which declared that public school students had the "absolute right to individually, voluntarily, and silently pray or meditate in school" in any manner not disruptive, and that no person could "require, encourage, or coerce a student to engage in or refrain from such prayer or meditation during any school activity."  Thus, students had been granted the right to pray at any time, during any school activity, prior to the passage of this law.  The Court finds that prayer was an implied option for Texas students during the moment of silence under the law existing prior to the passage of the challenged statute.

The Court in *Jaffree* determined that the addition of the word "pray" was the "only significant textual difference" from the prior statute, and its holding invalidating the statute was substantially founded on a legislative history of undeniable constitutional defiance reflected in the addition of the word "pray" to the statute.  None of the courts examining moment of silence laws have found language mandating, rather than permitting, the moment of silence to be constitutionally significant.  None of the courts have considered a situation like this one where the new statute also required that students recite the pledge of allegiance, nor a situation where

---

considered the addition of the word "pray" to a moment of silence statute.

[6]  In the oral argument before this Court on August 7, 2007, the following exchange occurred:

THE COURT:  Could the students pray under the old statute?
MR. COOK (Plaintiff's counsel):  Sure.
THE COURT:  So --
MR. COOK:  Students could pray even before the old statute.  They always had the right to silently pray in school.

. . .

MR. CRUZ (Governor's counsel):  "I agree that it is necessarily implied, if the statute said reflect, meditate, or any other silent activity, it is necessarily implied as a federal constitutional matter that you could pray."

Mr. Cruz went on to argue that saying explicitly what was necessarily implied should not make the statute unconstitutional.  He also argued that in practice, there might be some uncertainty as to whether prayer was disfavored by its exclusion from the list of options.

the statute added a catch-all option for students, as did the Texas law when it provided that students could "engage in any other silent activity that is not likely to interfere with or distract another student."

In *Van Orden v. Perry*, Justice Breyer, in his concurrence, cautioned courts not to create mountains out of molehills when looking at government actions under the Establishment Clause:

> [T]he First Amendment does not prohibit practices which by any realistic measure create none of the dangers which it is designed to prevent and which do not so directly or substantially involve the state in religious exercises or in the favoring of religion as to have meaningful and practical impact . . . [W]here the Establishment Clause is at issue, we must distinguish between real threat and mere shadow. Here, we have only the shadow.

545 U.S. 677, 704 (2005) (citing *Abington School District*, 374 U.S. at 308). In this Court's view, the addition of the word "pray" should not be independently dispositive of the constitutionality of the statute, when the amended statute also made substantive changes to the activities students could engage in, both prior to, and during, the moment of silence. Since before the amendment, prayer was already authorized by Texas law, its explicit addition to the list of authorized conduct should not taint an amendment that substantially modified prior law in several ways.


*iii. Legislative debates*

Governor Perry argues that the statute is supported by "three independent secular purposes": "(1) to encourage thoughtful contemplation; (2) to promote patriotism by providing for quiet meditation immediately following recitation of the pledges of allegiance; and (3) to protect individual religious freedom." However, his brief relies almost exclusively on the Neeley letter, which this Court has determined it will not consider. Thus to find a secular legislative purpose, the Court will discuss the legislative history in detail, including the story of how this

bill was introduced, amended, and passed.[7]

a.  Transcripts

*February 11, 2003 Senate Education Committee Meeting*

Senate Bill 83 was first introduced by Senator Wentworth without the pledge component.

In his introduction of the legislation, Senator Wentworth began by talking about the forty years

that had elapsed since the Supreme Court ruled that audible prayer in public schools was

unconstitutional.  Pls.' App. at 103.  He then described a Virginia law that had been challenged

and upheld, and he explained that the Virginia statute required students in public schools "to

spend 60 seconds a day in reflection, meditation, or prayer."  Id. at 104.  Senator Wentworth

noted that this was not audible prayer, and not denominational prayer, but instead sixty seconds

of silence.  *Id.*  He explained that students in Virginia's schools "can meditate, they can reflect,

they can pray, they can worry about the algebra test the next period.  We really won't know what

they're doing."  *Id.* at 104. He explained that his bill, Senate Bill 83, makes a moment of silence

"statewide and mandatory and adds the word "prayer" to the three things[8] that are allowed under

the law."  *Id.* at 104-05.

Following Senator Wentworth's introduction, the committee debated the merits of

**mandating** a moment of silence, rather than continuing to make a moment of silence

---

[7] The Court was provided with full transcripts based on audiotapes from Senate Education Committee meetings on
February 11, 2003 and March 25, 2003, the Senate Floor Debate from April 9, 2003, and the House Floor Debate
from May 6, 2003.  Governor Perry cites excerpts of transcripts from a House Public Education Committee meeting
held April 1, 2003 and a House Debate on May 5, 2003.  His response also notes that the entire audiotape of a
Senate Education Committee meeting on May 1, 2003 was inaudible.  Governor Perry also cites "testimony" of Dr.
William Bennett, but that testimony is not provided in the transcripts, and the appendix only provides the quotation
as part of a press release issued by Representative Branch.  Because it is unclear whether that comment was made
during the House proceedings or simply as part of a press release, the Court will not consider it in its analysis.
However, the Court believes the other transcripts and excerpts provided give a sufficiently complete picture of the
bill's development to support this Court's analysis.
[8] The prior statute provided that a student could "reflect or meditate."

discretionary with local districts. Many Senate members expressed a concern about allowing for local control. That change from permissive to mandatory was not found to be problematic in *Brown*, and this Court concurs that the switch to a mandatory moment of silence is not significant in this analysis.[9]

Another major debate in the Texas legislature was whether, by allowing silent and nondisruptive prayer, the statute would discriminate against students whose religions required kneeling, standing, or audible prayer. Senators expressed concerns about discriminating against individuals who pray in a manner that would not be permitted during the moment of silence.[10] Senator Wentworth explained that his proposed bill "would allow a condition and situation that is preferable to the condition and situation that exists in Texas today" where many schools do not provide for moments of silence. *Id.* at 120. He explained, "I do want to emphasize, this is not – this is not – for the purposes of the legislative intent, this is not a prayer bill . . . It's an opportunity to give people a chance to spend 60 seconds on a daily basis to reflect or meditate or pray." *Id.* at 120.

In discussing whether students should be required to be seated, Senator Wentworth expressed concerns about the constitutionality of the statute if no guidance were given, fearing that discrimination would result against those students who would kneel, stand, or take other physical action during those sixty seconds. While this Court need not express an opinion as to whether those concerns were justified, it should be noted that Senator Wentworth repeatedly emphasized that he wanted to pass a law that would not be struck down by the Supreme Court. From the beginning, proponents of the law expressed fidelity to, rather than defiance of, what they understood were constitutional principles.

---

[9] *See* note 1, *supra*.
[10] These concerns will be addressed by the Court below in discussing effects and entanglement.

The Senators also discussed the construction of this initial proposal, which operated as an exception to § 25.901 instead of an amendment to § 25.082. With that approach, a newly mandatory minute of silence would have acted as an exception to the general policy forbidding a person from requiring, encouraging, or coercing a student to engage in or refrain from prayer or meditation during any school activity. Kathy Douglas, of the Texas Association of School Boards, expressed concern as to whether sixty seconds was too long for kindergarteners, or if the duration should be left to local control, and she argued against making the moment of silence mandatory. Additionally, she suggested moving the amendment to § 25.082 "as the intent of the author has been, to not have this be a religiously motivated establishment-type prayer statute" and to "show you the legislative intent to separate this issue from the issue of prayer." *Id.* at 137.

A witness named Lisa Weatherford, whose affiliation was not stated, testified against the bill, noting that public school children "already have the right to privately reflect, meditate or pray any time they wish." She explained that that right had been "upheld by the Constitution" and that the "Texas Constitution addresses the matter explicitly," where "[s]tudents have the freedom to practice their religious beliefs," "wear their religious clothing," and take "a moment of silence during any time during the day, at any point in the school or between classes, during classes, before classes." *Id.* at 141-42.

A witness named Canter Neil Bloomoff, of the Austin Freedom Network, testified to his concern "that guiding the public school child who has these transformative moments and inspiration in prayer or in a moment of silence is a task for which public schools are not qualified nor is the classroom an appropriate place for such a holy act." *Id.* at 148.

Dee Morehead, director of Texas Impact, which was described as "a statewide interfaith social justice advocacy organization," testified that her organization opposed:

this or any other expansion of prayer in schools because the current law, we think, is perfect. It allows local control, and it isn't coerced. And I know that Senator Wentworth keeps saying that it's not about prayer, per se, but clearly he expects this proposal to help fix what he referred to, and I agree with him, the coarsening of society, and he said that that was his motive for filing the bill. The idea that 60 seconds of prayer or reflection or meditation would undo the influences of the rest of the day cheapens the spiritual practice and gives us the nutritional value to the soul of fast food.

*Id.* at 152. She expressed agreement with Mr. Bloomoff that "60 seconds of vague, unsupervised spiritual activity" was harmful because children were "not mature enough in their prayer lives to be able to pray or meditate alone effectively for 60 seconds." *Id.*

Hannah Ritery, President of the Texas National Organization for Women, testified against the bill, expressing fears about discrimination toward children who pray differently from Protestants. Don Lawrence, President of the Atheist Community in Austin, testified against the bill because he felt the moment of silence was about religion: "A moment of silence is a stand-in for mandatory prayer and has no place in school." Samantha Smoot, executive director of the Texas Freedom Network, "a nonpartisan alliance of about 12,000 Texans, religious and community leaders who advance the mainstream agenda of religious freedom and individual liberties," testified against the bill, concurring with Dee Morehead that the current law was "perfect." *Id.* at 158-59. She expressed concerns about leadership in some school districts being "inclined to instate school prayer," and that "[a] new law mandating a moment of silence would be viewed as an invitation to further push the envelope." *Id.* at 159.

Senator Wentworth closed by reiterating that his intent was not "part of any larger agenda dictated by any radical religious group," and that he wanted to give students "the opportunity to have that 60 seconds to do whatever they want to in." *Id.* at 162-63.

*March 25, 2003 Senate Education Committee Meeting*

On March 25, 2003, Senator Wentworth presented an amended Senate Bill 83 to the

committee, which moved the amendment to § 25.082. Pls.'s App. at 87. Because Kathy Douglas had suggested such a move, this switch provides evidence that the new law was not intended to operate as an exception to the law guaranteeing a right to pray silently and individually in schools and preventing persons from requiring, encouraging, or coercing a student to engage in or refrain from prayer or meditation. Instead of appearing in a section titled "Exercise of a Constitutional Right to Pray," it appeared in the section dealing with the school day, where the moment of silence law already in existence resided.

The new version of Senate Bill 83 added a requirement for students to recite pledges of allegiance to the United States and Texas flags. *Id.* at 88. Senator Wentworth explained that testimony at the hearing, constituent comments, and reviews of other proposed moment of silence bills offered in both the Senate and the House convinced the committee to add this provision. *Id.* The substitute presented by Senator Wentworth now provided for the moment of silence to follow the recitations of the pledges. The substitute with these changes passed in the committee without objection. *Id.* at 89.

Susie Painter, Director of Citizenship Education for the Christian Life Commission and the Texas Baptist General Convention, testified in favor of the amended bill. *Id.* at 90. She said, "I'm coming today to speak for this bill because we feel like this bill introduces a ritual of reverence and respect. And reverence and respect are wonderful qualities that are supported by both our character education programs in the state and by the general values of most of our community." *Id.*

Senator Wentworth was asked by Senator Shapiro, chairperson of the committee, if the word "pray" was in the bill, and if the Virginia law that had been upheld contained the word

"pray."[11]  *Id.* at 89-90. Senator Shapiro explained that she had been told that a moment of silence was "one thing," but that adding the word pray "would cause a problem for the Supreme Court." *Id.*  Senator West proposed an amendment striking the language about remaining standing after the pledges and during the moment of silence.  *Id.* at 95-98.  His amendment was proposed as an accommodation to students whose religions required them to sit or kneel.  Senate Bill 83, incorporating Senator West's amendment, was approved by all seven committee members to be considered by the full Senate.  *Id.* at 99.

*April 1, 2003 House Public Education Committee Meeting*

Representative Branch introduced House Bill 793 to the committee, explaining that it "deals with the school day, [and] the requirements that core values of our nationstate be practiced on a daily basis," which his research indicated that many schools did not currently require.  In response to testimony in opposition from ACLU representative Ruth Epstein, who argued that it limited the religious freedom of non-Christians,[12] Representative Branch explained that the moment of silence provided "a neutral space, it's a common space which allows parents to project on that space what they want their kids to focus on."  Def.'s App. at 9.

Representative Bonnen directed a question to Ruth Epstein:  "During this neutral space, this moment of silence, were you aware that the student could ponder their pets or think about a sunny day?  And if so, do you think those would have positive, positive effects on their performance throughout the day?'  *Id.*  Ms. Epstein responded, "Certainly.  It seems though that the, the tone and the spirit of this bill is for religious thinking [inaudible] gets a religious feeling

---

[11] In each of these discussions, the Senators referred to the Supreme Court as upholding the Virginia law.  In fact, in *Brown* the Fourth Circuit affirmed the trial court and upheld the law, but the Supreme Court merely denied certiorari.  Senator Wentworth was asked, "And does their bill say – have the word "pray" in it at all?"  Senator Wentworth replied, "Yes, ma'am."  She responded, "Okay.  That's all I wanted to know.  Thank you."
[12] This description of Ms. Epstein's testimony is taken from Governor Perry's Appendix, where Ms. Epstein's testimony is merely summarized.  The Court would prefer the full testimony, but must rely on what was provided by the parties.

looking at our wonderful Earth but that's not the usual definition of religion." *Id.*

Representative Bonnen responded, "Just a comment. I think that the moment of silence really

prepares a child for the seriousness of the day." *Id.* He continued to explain that the nature of

school is to mold children and give them structure, not to allow for the exercise of absolute

freedom. *Id.* at 10. Ms. Epstein responded, "Well, I don't disagree with you. But the history of

this bill is bathed in religious [sic], and effort to bring religion more into school than it is." *Id.*

> Representative Branch interjected:
>
> I've got to disagree with the Gentlelady's comments and it's absolutely not . . . We've already had testimony that silence at the beginning of the day is a good thing for students, maybe their only moment of silence. And it's also a common moment for, where we have a lot of diversity in our schools, not only to focus on the patriotism of the country, the love of state, but also a common moment of preparation, deliberation, and meditation to focus on the serious business of educating our students that day.

*Id.* Representative Bonnen concurred, "As a joint author along with Representative Branch, I

can tell you the authors' intent. My intent was not that at all [referring to Epstein's allegation of

religious intent]. It's to give them a time to really thing [sic] about the seriousness of the day."

*Id.*

*April 9, 2003 Senate Floor Debate*

Senator Wentworth debated the bill with Senator Hinojosa, who supported the pledge

provision but opposed the inclusion of the word "pray." Senator Wentworth argued, "Senator,

this is not a school prayer amendment and it's not designed to protect religions. It's designed to

require things that are not being done today. There is no current requirement that Texas school

students say the pledge of allegiance to the United States flag." Pls.'s App. at 10. Senator

Hinojosa again expressed concerns about the addition of the word "pray," as he believed that its

inclusion would only result in again "going up to the United States Supreme Court to deal with

an issue that's already been resolved, waste more money, waste more time and more resources on an issue that continues to be brought up again and again after the Supreme Court has ruled no prayer in the schools." Senator Wentworth again explained that this statute, "in essence, has already been adopted in Virginia and already been reviewed by the Supreme Court, and it's still in existence in Virginia and I believe it would be in the best interest of Texas to also have it." *Id.* at 11-12.

Senator Barrientos, who stated that something about the bill bothered him, asked whether Texas needed this bill. Senator Wentworth responded, "In order to inculcate patriotism and love of country and loyalty to our students, I believe it would be helpful." *Id.* at 13-14. The debate of April 9, 2003, also addressed local control and whether students should be told they must stand during the moment of silence, and legislators were asked if they knew the pledges. Senator Barrientos continued to express reservations when he commented, "this bill sounds so right, so patriotic, even religious, but there's something about it." Senator Lucio spoke in support of the bill, stating that a moment of silence "really gives an opportunity for our children – regardless if they're Catholic or Baptist or Methodist or Protestant or Jewish, to have an a [sic] opportunity to pray just momentarily to their God and to be thankful that they live in the greatest country in the world." *Id.* at 35.

Senator Whitmire proposed an amendment to require the legislature to revisit the moment of silence statute within two years, so that the legislature might better understand issues of implementation, assess whether the law was bogged down in court challenges, and whether it was disruptive or did not accomplish what was intended. *Id.* at 37-38. Senator Whitmire also suggested that it might have "very positive results, that students have learned respect for areas that they did not respect before." *Id.* Senator Whitmire's proposed amendment failed by a vote

of 14-16.  Senator Hinojosa proposed an amendment to delete the word "pray" from the bill, arguing that it was "not realistic to think that prayer would not be part of the agenda in many of the school districts, forcing many students to be contrary to their religion."  *Id.* at 44.  Senator Gallegos supported the amendment, fearing that students would be ridiculed for practicing their religions or being told that certain types of prayer were not allowed.  Senator Hinojosa's amendment failed by a voice vote.  *Id.* at 48.  Senate Bill 83 was then passed the Senate by a vote of 27-4.  *Id.*

*May 5, 2003 House Floor Debate*

Representative Branch explained the bill:  "The primary purpose of S.B. 83 is to promote the core values of patriotism and establish a contemplative period that underscores the seriousness of the education endeavor."  Def.'s App. at 16.  He continued, "This bill . . . sets up a tone of seriousness, and I think will make our school institutions more reflective and more reverent.  I think and I hope you all share the view that it's a great honor to be an American and it's a great honor to be a Texan."  *Id.*

*May 6, 2003 House Floor Debate*

Representative Hupp spoke about the bill, explaining that it would require students to say the pledges and then require "not a moment, but a full 60 seconds of silence so that students can pray, meditate or stare at their shoelaces."  Pls.'s App. at 52.  She opposed the bill because she felt the matter should be left to local control.  She also mentioned a "sheet of paper that is a letter from Susan Weddington and David Barton," Chair and Vice-Chair of the Republican Party of Texas, that says that "silent prayer is already permissible and most verbal prayer is still permissible.  In fact, the federal No Child Left Behind Act passed by Congress contains a specific provision that any public school not permitting voluntary student prayer will actually

lose federal funding." *Id.* at 53. Representative Hupp proposed an amendment changing the language from "shall" to "may," because she believed that the mandatory language might "actually be limiting the rights of our students. We may inadvertently be turning our teachers into prayer police and subjecting them and our school districts to lawsuits for violating the establishment clause by establishing the type of religious expression that the Legislature deems permissible, which is silent prayer or meditation." *Id.* at 54. She did not want to "force another mandate on our schools," subject "our schools to lawsuits," or "turn my teachers into prayer police." *Id.*

Representative Edwards and Representative Hupp discussed whether the law should be mandatory. Representative Edwards explained that "when we were pushing this bill and going around the state trying to get people to support prayer back in school, we found that a number of undesirable things happened when we took prayer out of school." *Id.* at 56. Representative Hupp agreed with Representative Edwards' assessment, although she cautioned that this bill "suddenly limits it to silent prayer as opposed to what we actually have now, where children – it has been stated in – with a U.S. Supreme Court decision that they can pray out loud." *Id.* Representative Edwards responded, "I understand what you're saying. I just – I just wish that we really could pray aloud." *Id.* at 57.

Representative Casteel joined the discussion, noting, "it's important to set the tone in your home at the dinner table." *Id.* He explained that "as state reps that we believe that each school district should set the tone – not may, shall – shall set the tone with a moment of silence or a minute of silence and to show reverence to the United States of America and to the State of Texas by saying a pledge." *Id.* at 58. He explained, "I think it's good for the children of the State of Texas to know that we are a reverent society, regardless of religion. And would you not

agree with me that we should ask them to be reverent and respectful of the United States by saying the pledge and the Texas pledge and set the tone for the day?" *Id.*

Representative Hupp again expressed her view that decisions should be made at the local level, and Representative Casteel replied, "Wouldn't you agree with me that we have an obligation to determine what is best for the public schools in the State of Texas, including how much math, how many credits they have to have and to set the tone for the public schools each morning with a prayer and the two pledges?" *Id.* at 59-60. Representative Hupp disagreed, calling it "micromanaging at its worst." *Id.*

Representative Branch opposed the amendment, and explained that the proposed bill "provides for an opportunity for the school children to say the U.S. pledge, the Texas pledge and have this minute of silence when they can do anything they want; but it does set the tone for the day that this is serious business, education and that they can contemplate what they plan to do with their day." *Id.* at 61. Representative Hupp asserted that hers was not an argument over whether "saying the pledge of allegiance or having a moment of silence is a good idea," but whether schools should receive another mandatory requirement. *Id.* at 62. Representative Branch interjected that he had just received a phone call from Susan Weddington and David Barton who said that "they are not opposing this bill and are not supporting this amendment [to make the moment of silence discretionary at the local level]." *Id.* at 63. In discussing Representative Hupp's concerns about subjecting local schools or teachers to law suits, Representative Branch explained, "All this bill does is tries to have a neutral space, a period of silence. It doesn't direct any activity." *Id.* at 65.

Representative Hughes questioned Representative Branch about the constitutionality of the bill:

Hughes:  [A]m I correct that the Supreme Court of the United States has held that a mandatory moment of silence which allows for prayer is permissible constitutionally?
Branch:  That's my understanding.
Hughes:  And so your bill in its current form would meet constitutional muster?
Branch:  That's what I'm told.
Hughes:  I think the Supreme Court's wrong and they shouldn't even make us go that far.  But clearly under even their standard your bill is okay even without the amendment; is that correct?
Branch:  It's my understanding.  And although I might occasionally disagree with the Supreme Court, I respect it as the rule of law of the land, as I know you do.
Hughes:  As I do.  Thank you for pointing that out.

*Id.* at 71-72.  Representative Hupp's amendment failed by a voice vote.  *Id.* at 27.  Senate Bill 83 passed the House by a vote of 132 - 4, with one abstention.  *Id.* at 83.  Having passed both Houses, the bill became law.

b.  Discussion

This case presents a difficult and close question.  There is no doubt that several legislators, including the sponsor of the bill as originally proposed, expressed a purpose for Senate Bill 83 to "put prayer back in schools."  However, a legislature's intent does not have to be exclusively secular to pass constitutional muster.  It is the Court's duty to determine whether the legislature was acting with plausible secular purposes that were not shams.

It is clear to the Court that the Texas legislature intended to pass a constitutional law, and that its legislators were not acting in defiance of Supreme Court precedent.  Senator Wentworth and Representative Branch, although mistaken, consistently suggested that a similar law had been substantively reviewed and approved by the Supreme Court.  The *Lemon* test requires courts to examine whether an objective observer would see the legislators as endorsing religion.  In evaluating whether an advanced secular purpose is a "sham," the Court is mindful that these legislators had an honest objective to comply with the Constitution.

Governor Perry offers three secular legislative purposes.  The first is patriotism.  The

Court concludes that although patriotism is an admirable and critical value to impart to schoolchildren, it cannot as a matter of law function as a proxy for a secular purpose supporting the presence of the word "pray" in the statute. Even if the moment of silence law were intended to enable students to contemplate the history and significance of our nation and the sacrifices made by our military, the opportunity to contemplate those matters was fully provided for by the prior statute's moment of silence. The addition of the word "pray" was unnecessary to achieve a secular purpose of inculcating patriotism in Texas public school students. The addition of the pledge requirements fully served this secular purpose and was unrelated to the new options made available by the amended moment of silence statute. Based on the language of the statute and the legislative history, the Court concludes that the addition of the words "pray" and "any other silent activity" was not designed to prompt patriotic thoughts or displays.

Allowing the patriotic purpose of the pledges to shield from constitutional scrutiny the addition of "pray," a word which is clearly associated with religious observance, would defeat the purpose of the *Lemon* test; an unconstitutional provision could be bootstrapped to an otherwise legitimate effort. To serve the purpose of the *Lemon* test, the Court must parse the language describing the activities during the moment of silence to tease out the secular purposes served by seemingly unrelated segments of the statute at issue.

The second secular purpose Governor Perry advances is accommodation, a purpose the *Brown* court found in Virginia's law. The Court does not find such a purpose supported by the legislative record. While the legislators articulated concerns that Senator Wentworth's bill would discriminate against certain religions, either by teachers becoming "prayer police" or by students ridiculing and harassing each other, they presented no evidence that the prior law was unclear or hindered the religious practices of students. As *Jaffree* was explained in *McCreary,*

"the Court declined to credit Alabama's stated secular rationale of 'accommodation' for legislation authorizing a period of silence in school for meditation or voluntary prayer, given the implausibility of that explanation in light of another statute already accommodating children wishing to pray." *McCreary,* 545 U.S. at 864. Because of the statutes already in place, and a lack of evidence of confusion in the administration of those statutes, the Court finds that accommodation is an implausible purpose in this case.

The third secular purpose advocated by the Governor is to provide for a period of thoughtful contemplation. In fact, several legislators and witnesses during the hearings repeatedly suggested that the new provisions would allow for thoughtful contemplation, seriousness, and reverence. Legislators repeatedly emphasized that students could stare at their shoes, think about upcoming exams, think about their pets, engage in other nonverbal activities during the moment of silence, as well as pray, if they wished. The addition of the word "pray" directly furthers the purpose of encouraging students to engage in individual contemplative activity. Testimony was repeatedly given on the usefulness of such a period of silent contemplation. Again and again, the law was said to give students an opportunity to "do whatever they want," to introduce "a ritual of reverence and respect," to provide "a neutral space," to prepare children for "seriousness," to create "a common moment of preparation, deliberation, and meditation," to allow students to think about the "seriousness of the day," to "underscore the seriousness of the education endeavor," to make schools institutions that are "more reflective and more reverent," and to "set the tone for the day." These purposes, which are legitimate and secular, are served by the entirety of the language surrounding what can be accomplished during the moment of silence.

In these circumstances, the Court concludes that a reasonable observer would not find the

addition of the word "pray" to operate as an endorsement of religion or prayer in the classroom. Prayer was already an implied option under the prior statute, and making explicit what was already implied and justified by another state law, should not cause the modification to be struck down. As Justice Breyer emphasized in *Van Orden*, 545 U.S. at 704, the Court must distinguish between a real threat and a mere shadow, and the Court finds this change to be the latter.

This finding is further supported by the addition of a catch-all provision, which allows students to engage in any sort of thought or silent activity that did not fit into the previously enumerated categories. At the very least, adding the catch-all option contemporaneously with the addition of "pray" counsels against a finding that the statute endorses prayer over the other options. The Court finds that the legislators' interest in creating such an opportunity for silent contemplative thought, of whatever kind, was not a sham. The consistent and frequent reference to this purpose in the legislative record counsels against an inference that it was a deceptive justification. Thus, the court finds the encouragement of thoughtful contemplation to be a valid secular purpose.

Although it is a close question, the Court finds legitimate the secular purpose of allowing for all types of thoughtful contemplation and concludes that this purpose is supported by the legislative history and sufficient to withstand the *Lemon* test. The Court rejects the argument that this purpose is trivial or pretextual. Because the statute is supported by a valid secular purpose, it passes the first prong of the *Lemon* test.

B. Primary Effect

Plaintiffs argue that the statute advances religion by singling out prayer as an allowable activity during the moment of silence, because the statute does not also designate "not praying" as an option. However, the legislature included a catch-all provision that students may "engage

in any other silent activity that is not likely to interfere with or distract another student," so students are certainly free to "not pray" during that time. Plaintiffs also argue that the bill restricts those who practice certain religions, because their traditions may require that they pray audibly, kneel, face Mecca, or engage in other active steps that could be interpreted as interfering with or distracting another student. However, these students are already guaranteed the absolute right to pray in § 25.901. The Plaintiffs present no evidence that § 25.901 was or is ineffective in protecting these students.

Although students are not permitted to pray audibly or in a distracting way during the moment of silence, the court in *May* aptly explained, "[u]ndoubtedly the school environment requires limitation upon the time, place, and manner of such self expression . . . It is, however, the compulsory school attendance law, not [the moment of silence law] . . . that prevents other persons from engaging in their kind of prayer." 780 F.2d at 248. There is no evidence of discrimination against particular religious groups in the present statute, as it provided one minute during the day when distractions are minimized. The Court finds that the primary effect of the statute is to institute a moment of silence, not to advance or inhibit religion.

## C. No Excessive Entanglement between Government and Religion

Plaintiffs also argue that the statute results in excessive entanglement of government and religion since teachers must determine whether a child's activity is "likely to interfere with or distract another student." The Eleventh Circuit rejected this argument in *Bown*, finding that "[t]here are many times during any given school day when teachers tell their students to be quiet and when audible activity of any kind is not permitted." 112 F.3d at 1474. The *Bown* court held that "[t]he fact that this particular period of silence is mandated statewide does not create

entanglement problems." *Id.*  Teachers must maintain control of their classrooms.  Plaintiffs have not advanced any evidence of entanglement in classrooms or of teachers experiencing difficulty differentiating between distracting and non-distracting silent activities during the moment of silence mandated by the challenged statute.  Plaintiffs have failed to demonstrate how the statute fosters an excessive entanglement between government and religion.

Conclusion

The Court finds that Texas Educ. Code § 25.082(d) is constitutional under the Establishment Clause because it satisfies the *Lemon* test:  the legislature amended the statute to provide a period of time for the full panoply of thoughtful contemplation, which the Court finds to be a secular legislative purpose; the primary effect of the amendment is not to advance or inhibit religion; and the statute does not promote an excessive entanglement between government and religion.  The Court therefore **GRANTS** Defendant Rick Perry's Cross Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Summary Judgment.  The Court also **DENIES** Carrollton-Farmers Branch Independent School District's Motion for Summary Judgment as moot.

**SO ORDERED.**

**DATED:**  January 2, 2008.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**